IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES BROWN, JR., | : | CIVIL ACTION NO. **1:CV-13-0975** |
| Plaintiff | : | (Judge Kane) |
| v. | : | (Magistrate Judge Blewitt) |
| WARDEN DANIEL KEEN, *et al.*, | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. BACKGROUND

Plaintiff James Brown, Jr., formerly a resident of Franklin County Jail ("FCJ") in Chambersburg, Pennsylvania, brought the instant § 1983 failure to protect claim under the Eighth Amendment by filing a Complaint through his attorney on April 16, 2013 and paying the filing fee (Doc. 1). Plaintiff names Defendants FCJ Warden Daniel Keen, Franklin County, Franklin County Commissioner Robert L. Thomas, County Chairman David S. Keller, Franklin County Commissioner Robert G. Ziobrowski, the Franklin County Board of Commissioners, and ten (10) John Doe Defendants. (*Id.*). Plaintiff alleges : 1) deliberate indifference by Warden Keen and the ten unnamed defendants; 2) implementation by Franklin County and its Commissioners of policies, practices, and customs that deprived the Plaintiff of adequate protection. (Doc. 1, pp. 6-7).

On June 24, 2013, the Defendants (with the exception of Doe Defendants 1-10) filed a Motion to Dismiss for Failure to State a Claim (Doc. 6) along with an affidavit of Warden Keen (Doc. 6-2, pp. 2-4) and the FCJ grievance procedures (Doc. 6-2, pp. 7-9). On that same day, Moving Defendants filed a brief in support of their motion. (Doc. 7). On July 8, 2013, Plaintiff

filed a Reply Brief and a Response in Opposition to named Defendants' Motion to Dismiss. (Doc. 8, 9). On July 22, 2013, Moving Defendants filed a Reply Brief in support of their Motion to Dismiss. (Doc. 10).

Thus, Moving Defendants' Motion is now ripe for disposition.

## II. ALLEGATIONS OF COMPLAINT

Plaintiff was arrested for a parole violation in 2011 and detained at the Dauphin County Correctional Facility ("Dauphin CCF") in Harrisburg, Pennsylvania. (Doc. 1, ¶ 9). While incarcerated at Dauphin CCF, Plaintiff assisted federal law enforcement authorities by providing them with information about criminals. (*Id*. at ¶ 10). Plaintiff helped to convict people of major crimes, including homicide, and received many credible threats at Dauphin CCF (*Id*. at ¶¶ 11-12). As a result of these threats, Plaintiff was transferred to FCJ in protective custody. (*Id*. at ¶ 13). Defendant Keen and his staff knew of the threats to Plaintiff. (*Id*. at ¶ 14). Defendant Keen allowed her staff to leave Plaintiff exposed to known associates of those who threatened Plaintiff. (*Id*. at ¶ 15). On or about November 19, 2012, FCJ staff left Plaintiff in an open and unsecured area and Plaintiff was severely beaten by unknown assailants. (*Id*. at ¶ 17). Defendants have thus far refused to turn over any films of the incident or names of the Doe Defendants believed to be related to the attack. (*Id*. at ¶ 19). Plaintiff's injuries included lost consciousness, a three-week coma, bilateral subdural hematomas, bilateral subarchnoid hemorrhages, a broken jaw, damage to his teeth, a broken nose, infections associated with his injuries, skull fractures, cervical ligament damage, a neck sprain, and a concussion. (*Id*. at ¶ 20). Plaintiff required in-patient hospitalization through March 2013, a tracheotomy, a feeding tube, a wired jaw, physical

therapy, several medications, a neck brace, and neurological treatment as a result of his injuries. (*Id*. at ¶ 21). Additionally, Plaintiff could not walk for months, was bedridden for weeks, and could not chew, eat, or swallow for several weeks. (*Id*. at ¶ 22). Most of the consequences of the beating are or may be permanent. (*Id*.).

Plaintiff further states that the Commissioners and County of Franklin employed policies, customs, and procedures including 1) failing to train prison staff to adequately protect prisoners in protective custody; 2) failure to maintain proper protective custody procedures; 3) failure to screen, classify, and house in a way that protects inmates from known risks, and 4) failure to insure proper security in open areas within the prison (*Id*. at ¶ 29).

As relief in his Complaint, Plaintiff asks the Court:

a. to enter judgment in his favor, and against defendants, jointly, severally, and individually;
b. to award him compensatory damages;
c. to award him exemplary damages against defendant Keen and the John Doe defendants
d. to award him reasonable attorney's fees and the costs of litigation;
e. to award such interests and costs as is allowed by law; and
f. to provide such other relief as the court deems just and equitable.

(Doc. 1, p. 8).

### III. STANDARDS OF REVIEW

**A. Motion to Dismiss Standard**

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States

Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

*See also Banks v. County of Allegheny*, 568 F.Supp.2d 588-589.

**B. § 1983 STANDARD**

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Slater v. Susquehanna County*, 613 F. Supp. 2d 653, 660 (M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa. 2007) ("only those who act under color of state law are liable to suit under section 1983."). "In order to satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state official, but can also be held liable as a state actor." *Slater v. Susquehanna County*, 613 F. Supp. 2d at 660(citations omitted).

Furthermore, it is well-established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a §1983 case, and that a complaint must allege such personal involvement. *Id*. Each named defendant

must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id*. As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id*. Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.

**IV. DISCUSSION**

1. *Exhaustion of Administrative Remedies*

Initially, we note there is a dispute as to whether Plaintiff's injuries rendered administrative remedies unavailable to him. Plaintiff must exhaust his available administrative remedies prior to filing a civil rights suit. *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006). In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including civil rights actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id*.

However, Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). We hold that Defendants failed to disprove exhaustion. Plaintiff filed a grievance with the "First Level Grievance Officer" at FCJ on April 6, 2013, almost five months after the incident at issue. (Doc. 8-1, pp. 2-3). Defendant Keen states in his affidavit that "Mr. Brown did not complete any step of the grievance process." (Doc. 6-2, p. 3, ¶ 8). This would suggest that FCJ never received the Plaintiff's grievance letter marked "Exhibit A." (Doc. 8-1, pp. 2-3). However, Moving Defendants state that even if Plaintiff did attempt to file a grievance in April, it was untimely as their policy mandates that a grievance must initially be filed within five days of the alleged incident (Doc. 7, p. 11). Plaintiff correctly points out that exhaustion is an affirmative defense that need not be pleaded in a complaint. (*Jones v. Bock*, 549 U.S. 199, 214-215 (2007)). Moreover, the administrative remedies were unavailable to Plaintiff because he was incapable of using them due to medical issues allegedly caused by the very incident for which he seeks redress. (*See Ricketts v. AW of Unicor*, 2008 WL 1990897, *6 (M.D. Pa. 2008)). Therefore, we hold that Plaintiff adequately alleged exhaustion and we will allow this matter to proceed.

   2.   *Monell Claims against the County and Commissioners*

We find that Plaintiff has failed to establish a claim under *Monell* against the County Commissioners and the Board. We also find that the *Monell* claim against Franklin County may proceed.

Under *Monell*, "municipalities and other local government units are among those 'persons' to whom Section 1983 applies." *Meyers v. Schuylkill Co. Prison*, 2006 WL 559467,

*9; *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 587 (M.D. Pa. 2008). Since Defendant Franklin County is a local government unit and since Plaintiff has sued Defendant Warden Daniel Keen in his official capacity, the standards annunciated in *Monell* apply to them. *See Malles v. Lehigh County*, 2009 WL 2258623, *7 (E.D. Pa.), 639 F.Supp.2d 566 (E.D. Pa. 2009); *Patterson v. City of Philadelphia*, 2009 WL 1259968, *9.

As the *Malles* Court stated:

> According to the teaching of *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Lehigh County "can be sued directly under § 1983 ... [when] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [Franklin County's] officers" or where the constitutional deprivations occurred pursuant to governmental custom. *Monell,* 436 U.S. at 690, 98 S.Ct. 2018.

2009 WL 2258623, *7.

We find that Plaintiff could demonstrate a municipal liability claim under *Monell* against Defendants with respect to his stated constitutional claim under the Fourteenth Amendment. Defendants cannot be held liable for the conduct of persons they supervise pursuant to *respondeat superior*. *Meyers v. Schuylkill Co. Prison*, 2006 WL 559467, *9; *Patterson v. City of Philadelphia*, 2009 WL 1259968, *9. Rather, "[Defendants are] subject to liability to the extent [they] maintain an unconstitutional custom or policy that caused the alleged constitutional violation." *Id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 849-50 (3d Cir. 1990)).[1] But here, Plaintiff alleges that the County employs policies, customs, and procedures that deprived the

---

[1] Defendants also cite to *Bielevicz v. Dubinon*, 915 F.2d 845, 849-50 (3d Cir. 1990). (Doc. 27, p. 4).

Plaintiff of his constitutional rights (Doc. 1, ¶¶ 4, 28-30). Thus, municipal liability "must be founded upon evidence that the government unit itself supported a violation of constitutional rights." *Patterson v. City of Philadelphia*, 2009 WL 1259968, *9(citations omitted). We find a dispute as to whether a custom or policy of Franklin County violated Plaintiff's constitutional rights. Plaintiff adequately alleges that Franklin County failed to implement a policy that protected inmates in protective custody. As such, we will deny Defendants' Motion to Dismiss the claim against Franklin County.

> As the *Kokinda* Court stated:
>
>> A municipality cannot be held liable for the actions of its employees under § 1983 based upon *respondeat superior*. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, "the government as an entity is responsible under § 1983" when it "caused" the Plaintiff's injury; that is, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id*. at 694, 98 S.Ct. 2018. Where, as here, Plaintiff alleges that the flawed policy is a failure to train, the municipality can be held liable when "'that failure amounts to "deliberate indifference . . . [to the constitutional rights of persons with whom the police come in contact.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate 'constitutional'' injury." *Id*. at 325 (citations omitted).
>>
>> To survive a motion to dismiss, the plaintiff must "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." *Grayson v. May view State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002) (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

*Kokinda*, 557 F. Supp. 2d at 590-91.

9

Therefore, as the Court in *Patterson v. City of Philadelphia*, 2009 WL 1259968, *10, stated:

> There are two ways that a plaintiff can establish municipal liability under § 1983: policy or custom. Under *Monell,* a plaintiff shows that a policy existed "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Bielevicz,* 915 F.2d at 850 (*quoting Andrews v. City of Philadelphia,* 895 F.2d 1469, 1480 (3d Cir.1990) (*quoting Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986))). A plaintiff may establish a custom, on the other hand, "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (*citing Andrews,* 895 F.2d at 1480). In other words, custom may be established by proving knowledge of, and acquiescence to, a practice. *Fletcher v. O'Donnell,* 867 F.2d 791, 793-94 (3d Cir.1989).
> It is clear under either route that "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz,* 915 F.2d at 850 (*citing Andrews,* 895 F.2d at 1480). In order to determine who has policymaking responsibility, "a court must determine which official has final, unreviewable discretion to make a decision or take an action." *Andrews,* 895 F.2d at 1481.
> In addition to proving that an unlawful policy or custom existed, a plaintiff also bears the burden of proving that such a policy or custom was the proximate cause of the injuries suffered. *Bielevicz,* 915 F.2d at 850 (*citing Losch v. Borough of Parkesburg,* 736 F.2d 903, 910 (3d Cir.1984)). "A sufficiently close causal link between ... a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom." *Bielevicz,* 915 F.2d at 851 (*quoting Spell v. McDaniel,* 824 F.2d 1380, 1391 (4th Cir.1987)).
>
> It well-settled in the Third Circuit that personal involvement of each defendant in the alleged constitutional deprivations is a requirement in a civil rights case, and that a complaint must allege such personal involvement. *Id.* Each defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.; Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1998).

The Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937 (2009), repeated the personal involvement necessary in a § 1983 action. In *Iqbal*, the Supreme Court stated the following:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

The Court further explained that while a court must accept as true all of the factual allegations contained in a complaint, this requirement does not apply to legal conclusions. Therefore, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Twombly*, 550 U.S. at 555; *see also Phillips v. County of Allegheny,* 515 F.3d 224, 232 (3d Cir.2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Twombly,* 550 U.S. at 556 n. 3). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly,* 550 U.S. at 556.

We therefore find that the claim against Defendants Robert L. Thomas, David S. Keller, and Robert G. Ziobrowski should be dismissed. Plaintiff seeks a claim against these Defendants based solely on *respondeat superior* as they are not alleged to have any personal involvement beyond their roles as Franklin County Commissioners. Plaintiff makes only the rote recitation that "The above-alleged violations of plaintiff's rights and the damages they caused resulted from policies, practices, customs and procedures maintained and endorsed by defendants for

11

and at FCJ." While we agree that Plaintiff may have stated an adequate *Monell* claim against the municipality, we find that these policies are the responsibility of Franklin County and not its individual commissioners. We will therefore recommend dismissal of the claim against all Franklin County Commissioners.

Under the Eighth Amendment, prison officials have a duty "to take reasonable measures to protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (internal citations omitted).

> In *Glazewski v. Corzine*, 385 F. App'x 83, 88 (3d Cir. 2010), the Court stated: To establish a failure to protect claim, an inmate must demonstrate that: (1) he is "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the prison official acted with "deliberate indifference" to his health and safety. *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970. "[T]he official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel,* 256 F.3d 120, 133 (3d Cir. 2001).

In *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001), the Third Circuit stated that:

> [S]ubjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk. *See* [*Farmer*, 511 U.S.] at 842, 114 S.Ct. 1970. Finally, a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring. *See id*. at 844, 114 S.Ct. 1970.

Plaintiff sufficiently alleges a cognizable failure to protect claim against Defendant Keen because he asserts that Defendant Keen had knowledge of the possibility of physical attacks of Plaintiff based on his protective custody status. There may have been a "substantial risk of

serious harm" of which Defendant Keen was aware and Defendant Keen may have acted with "deliberate indifference" to Plaintiff's health and safety. *See Glazewski*, 385 F. App'x at 88. Accordingly, we will respectfully recommend that the Court permit Plaintiff's Eighth Amendment failure to protect claim to proceed against Defendant Keen.

As stated, Plaintiff adequately alleges deliberate indifference to his needs (Doc. 1). The Third Circuit defined deliberate indifference in *Natale v. Camden City Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The Court held:

> A prison official acts with deliberate indifference to an inmate's serious medical needs when "he knows of an disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment... ." *Estelle*, 429 U.S. 97. Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id* at 107. "[A]s long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a civil rights cause of action, and an inmate's disagreement with medical treatment is insufficient to establish a "deliberate indifference." *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

*See also George v. PA DOC*, 2010 WL 936778, *5.

As stated above, Plaintiff alleges that Defendant Keen knew of the risk to his personal safety as Plaintiff was placed in protective custody after being transferred for due to credible threats at the Dauphin CCF. Plaintiff is not merely alleging that Defendants acted with deliberate indifference without pointing to any specific conduct or misconduct; he specifically points out that his protective custody status belies Defendant's ignorance of the danger to Plaintiff.

Plaintiff should be given the opportunity to pursue this matter through discovery in order to prove that Defendant Keen implemented policies and practices that were deliberately indifferent to Plaintiff's safety or that Defendant Keen failed to act despite knowing Plaintiff faced a substantial risk of harm in being unprotected while in protective custody. We find that Plaintiff has stated that Defendant Keen acted with a sufficiently culpable state of mind with respect to the Eighth Amendment claim against him. Plaintiff has alleged that Defendant Keen knew of and disregarded any excessive risk to Plaintiff by placing him in an open area without due security or that Defendant Keen was aware of facts from which such an inference could be drawn.

Pursuant to the above cases, we will recommend that Plaintiff's claim against Defendants Thomas, Keller, Ziobrowski, and the Franklin County Board of Commissioners be dismissed with prejudice as we find futility in allowing him to re-file. *See Grayson v. Mayview State Hosp.* 293 F. 3d 103 (3d Cir. 2002).

However, we will recommend that the claims against Franklin County and Defendant Keen be allowed to proceed.

## V. RECOMMENDATION

We respectfully recommend that Plaintiff's claim against Defendants Thomas, Keller, Ziobrowski, and the Franklin County Board of Commissioners be **DISMISSED WITH PREJUDICE**.

We also recommend that the claims against Defendants Keen and Franklin County be allowed to continue.

We further recommend that this case be remanded to the undersigned for further proceedings.

                                          **s/ Thomas M. Blewitt**
                                          **THOMAS M. BLEWITT**
                                          **United States Magistrate Judge**

**Dated: August 23, 2013**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES BROWN, JR., | : | CIVIL ACTION NO. **1:CV-13-0975** |
| | : | |
| Plaintiff | : | (Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WARDEN DANIEL KEEN, *et al.*, | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 23, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with

instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.


                                             s/ Thomas M. Blewitt
                                             **THOMAS M. BLEWITT**
                                             **United States Magistrate Judge**


**Dated:   August 23, 2013**